## JOHN HANCOCK MUT. LIFE INS. CO. v. CASEY.

### SAME v. CASEY et al.

#### Nos. 4046, 4047.

Circuit Court of Appeals, First Circuit.

Feb. 27, 1945.

G. K. Richardson, of Boston, Mass. (Richardson, Wolcott, Patten & Bennett, of Boston, Mass., of counsel), for appellant.

J. C. Johnston, of Boston, Mass., for Casey, Trustee, appellee.

Frank J. Murray, Corp. Counsel, and William H. Kerr, Law Dept., City of

Boston, both of Boston, Mass., for Merritt Thompson, Collector, did not file brief nor argue.

Before MAGRUDER, MAHONEY and WOODBURY, Circuit Judges.

PER CURIAM.

Carlton Hotel, Inc., hereinafter referred to as the debtor, is the owner of premises known as the Hotel Buckminster in Boston. John Hancock Mutual Life Insurance Company, hereinafter referred to as John Hancock or as appellant, is the holder of a first mortgage on the premises. The principal amount of the mortgage note has been reduced from $345,000 to $323,000. There has been a default in payments of interest and installments of principal. · The mortgage contains no acceleration clause, and runs until November 1, 1955, when a final balance of $183,-170 becomes due.

On August 5, 1942, the debtor filed in the court below its petition for reorganization pursuant to Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq. This petition was approved on August 18, 1942, and a trustee appointed.

Meanwhile, on August 17, 1942, the United States filed, also in the court below, a petition for condemnation of the Buckminster Hotel premises except that portion thereof occupied by the Yankee Network, Inc., as lessee. The interest sought to be taken was "a term for years ending June 30, 1945 * * * said term to be cancellable at the election of the United States on June 30, 1943, or on June 30, 1944, which election shall be signified by the giving of sixty days' notice." The United States deposited with the clerk of the court the sum of $34,945 as the estimated just compensation for taking the use and occupation of the premises from August 17, 1942, to June 30, 1943. Judgment was entered for the United States on the petition for condemnation and statutory declaration of taking filed pursuant to 40 U.S.C.A. § 258a.

In John Hancock Mutual Life Ins. Co. v. Casey, 1943, 139 F.2d 207, we affirmed an order of the District Court entered May 4, 1943, directing the disbursement of this deposit of $34,945 to the trustee in the reorganization proceedings.

On August 24, 1943, the United States filed an amendment to its declaration of taking in the condemnation proceedings, correcting the estate to be acquired so as to read as follows: "The estate taken for said public uses is a term for years ending June 30, 1944, extendable for yearly periods thereafter during the existing national emergency at the election of the United States, notice of which election shall be filed in this proceeding at least sixty days prior to the end of the term taken or subsequent extensions thereof, * * *." At the same time, the United States deposited in the registry of the court the further sum of $40,000 as the estimated just compensation for the taking of the property for the term commencing July 1, 1943, and ending June 30, 1944.[1]

The two pending appeals are the sixth and seventh appeals to this court taken by John Hancock, the mortgagee, on one or another phase of the above reorganization and condemnation proceedings. The earlier appeals are found in John Hancock Mutual Life Ins. Co. v. Casey, 1 Cir., 1943, 134 F.2d 162, certiorari denied 319 U.S. 757, 63 S.Ct. 1176, 87 L.Ed. 1709; Id., 1 Cir., 1943, 139 F.2d 207; Id., 1 Cir., 1944, 141 F.2d 104, certiorari denied 65 S.Ct. 39; John Hancock Mut. Life Ins. Co. v. Thompson, Collector of Taxes, 1 Cir., 1944, 147 F.2d 761.

In No. 4047, the appeal is from an order of the District Court in the condemnation proceedings entered September 14, 1944, directing the disbursement out of the $40,000 deposit of the sum of $13,922.17 to the trustee of Carlton Hotel, Inc., "in trust for the purpose of complying with the order entered this day in the matter of Carlton Hotel, Inc., debtor in reorganization proceedings * * *." In No. 4046, the appeal is from a complimentary order in the reorganization proceedings entered September 14, 1944, directing that the trustee pay to John Hancock the sum of $48,867.17, and providing that John Hancock shall accept said payment and apply it "in satisfaction of any arrears to and including May 1, 1944, upon the note and mortgage held by it of the debtor, Carlton Hotel, Inc., and in satisfaction of the money expended by [John Hancock] for premiums of insurance on buildings upon the real estate covered by said mort-

---

[1] We understand that there has since been a third deposit, in the sum of $40,-000, as the estimated just compensation for taking the use and occupancy of the property for the term commencing July 1, 1944, and ending June 30, 1945.

gage in the amount of $2,004.25." Further, the order directed that the trustee "use for such payment the sum of $34,945, to which he is entitled under order of the fourth day of May, 1943, and the further sum of $13,922.17 which has this day been ordered disbursed to said Thomas J. Casey, trustee" by the aforesaid order in the condemnation proceedings.

We do not readily understand why John Hancock objects to being paid, as provided in the orders under review.

■ Appellant expresses apprehension that "to accept the $48,867.17 in satisfaction of all arrears, as ordered by the court, may result in prejudicing the mortgagee's right to recover" various costs, charges and attorneys' fees alleged to have been incurred in connection with the entry to foreclose, and also litigation expenses—as to which items the court expressly reserved its ruling. It is evident from a reading of the memorandum filed by the District Court that the sum of $48,867.17 embraced only (1) principal and interest payments due up to and including May 1, 1944, (2) the pro rata amount due the reserve fund for taxes as required by the mortgage note, and (3) the sum of $2,004.25 covering war risk and fire insurance premiums paid by the mortgagee. It was certainly not an abuse of discretion for the court to order immediate payment of the uncontroverted items, reserving for further consideration other items which might be subject to challenge, either as to their amount or as to the propriety of their payment out of the particular funds before the court. Whatever rights the mortgagee may have as to these reserved items are by no means foreclosed by the orders in question.

■ We do not find in the record any actual situation requiring the application of principles of marshaling, certainly none which this appellant has any standing to raise. In its statement of points, appellant claims error in the District Court's denial of its request for ruling No. 13, as follows: "The rents received from The Yankee Network, Inc., should be applied in payment of the sums due upon the mortgage from Carlton Hotel, Inc., to John Hancock Mutual Life Insurance Company before any part of the sums received in the condemnation proceedings are applied in payment of the sums due on said mortgage." But it has been the consistent position of John Hancock that it is not only entitled to a turnover of all the rental moneys in the hands of the trustee derived from the Yankee Network lease, to be applied to the arrears on the mortgage note, but that as holder of the first mortgage it also is entitled to be paid from the condemnation deposit "the whole amount thereof to the amount remaining unpaid on its mortgage"; further, that if the estate taken by condemnation "is less in value than the amount of [the] mortgage, [the mortgagee] is entitled to the value of the estate taken irrespective of whether the value of his security was diminished thereby." In fact, appellant assigns as error the court's denial of various requests for rulings to this effect.[2] Of course, payment of arrears of principal and interest on the first mortgage, as prescribed by the orders under review, will enhance the security of any junior mortgages.

In previous appeals we made reference to the problem of distributing a condemnation award when the Government takes only a term for years; but it was not necessary for us to rule definitely on the extent of the mortgagee's interest in the deposit in such a case. In John Hancock Mutual Life Ins. Co. v. Casey, 1 Cir., 1943, 139 F.2d 207, we affirmed an order of the District Court in the condemnation proceedings directing the distribution of the initial deposit of $34,945 to the trustee in reorganization, but the ultimate disposition of such deposit in case the reorganization failed was left open. In John Hancock Mutual Life Ins. Co. v. Merritt Thompson, Collector of Taxes, we affirmed another order in the condemnation proceedings directing the clerk to pay to the City of Boston out of the deposit of $40,000 made by the Government for the second year of occupancy, the sum of $19,998.09 for taxes due on the premises.

---

[2] In its brief in John Hancock Mutual Life Ins. Co. v. Casey, 1 Cir., 1943, 139 F.2d 207, John Hancock asserted that as first mortgagee it was entitled to the entire condemnation deposit even though the taking was of a term, not the fee, and that this was so whether or not the mortgage was in default. By payment of the entire deposit to the mortgagee, "the mortgagor sustains no loss, and his mortgage debt is paid to the extent of the award, thus increasing his equity, or, if sufficient to discharge the entire debt, he becomes the owner of the property free and clear of the mortgage."

■ Contrary to an intimation in our opinion in John Hancock Mutual Life Ins. Co. v. Casey, 1 Cir., 1944, 141 F.2d 104, 108, Massachusetts law does not control the distribution of the condemnation deposit as between mortgagor and mortgagee, though such state law does define the extent of the mortgagee's rights in the real estate by way of security at the date of the taking. The condemnation was pursuant to § 2 of the Act of July 2, 1917, 40 Stat. 241, as amended by Title II of the Second War Powers Act, 1942, 56 Stat. 177, 50 U.S.C.A.Appendix, § 632, which authorizes the Secretary of War to condemn a term for years for military purposes, and provides that such proceedings shall be "in accordance with the Act of August 1, 1888 (25 Stat. 357), or any other applicable Federal statute." This Act of August 1, 1888, 40 U.S.C.A. §§ 257, 258, requires only that in condemnation proceedings the federal court shall adopt the forms and methods of procedure afforded by the law of the state but does not invoke the state law on any "questions of substantive right—such as the measure of compensation—grounded upon the Constitution of the United States." United States v. Miller, 1943, 317 U.S. 369, 379, 380, 63 S.Ct. 276, 283, 87 L.Ed. 336. Under 40 U.S.C.A. § 258a, the District Court in condemnation proceedings is given "power to make such orders in respect of encumbrances, liens, rents, taxes, assessments, insurance, and other charges, if any, as shall be just and equitable." In United States v. Certain Lands in the Borough of Brooklyn, 2 Cir., 1942, 129 F.2d 577, 579, the court said: "Nor are we obliged to follow the local law in construing a federal statute which provides that distribution in respect to encumbrances 'shall be just and equitable.'"

■ Though we have found no controlling authority on the point, in the circumstances of this case it would not, in our opinion, be "just and equitable" to disburse to the mortgagee the whole of each successive annual deposit by the United States for as long as any part of the mortgage debt remains outstanding. This would deprive the debtor of income from the property for an indefinite number of years and would result in paying off the mortgage debt at an accelerated rate. The debtor here has contracted for a long-term financing, with no provision for acceleration in the event of a default in payment of interest or principal installments, and is entitled to the benefit of its bargain so long as the security rights of the mortgagee have not been substantially impaired.

■ Where the Government takes only a term for years, the mortgagee retains its security interest in the reversion. Nevertheless, such a taking does impair the mortgagee's security somewhat, thereby giving the mortgagee a substituted claim on the deposit. Part of the mortgagee's security is that, in case of a future default, he may take possession of the premises and collect the rents and profits thereof. But when the United States condemns a term for years and deposits with the court in advance the requisite just compensation therefor, the mortgagee cannot, upon a subsequent default, take possession against the United States and collect the rents and profits. Therefore, even if the mortgage had not been in default at the time of such taking here, it would have been prejudicial to the mortgagee's rights if the court had forthwith unreservedly disbursed the condemnation deposit to the debtor or to the debtor's trustee to be dealt with as general assets. In such a situation, the mortgagee's rights would be fully respected if, when each annual deposit is paid in advance by the United States into the registry, the court sets aside a portion thereof sufficient to meet all payments due from the mortgagor in the ensuing year. If this is done, the mortgagee has no standing to object to a disbursement forthwith of the balance of the deposit to the debtor or to his trustee to be dealt with as general assets. Any default during the ensuing year could then be promptly made good out of the reserved fund in the registry; but if the debtor should make its scheduled payments out of other funds from time to time during the year, corresponding amounts might be released to the debtor out of the reserved fund. Such administration of the deposits would fully compensate the mortgagee for any impairment of its security resulting from the taking by the Government of successive yearly terms. John Hancock's broader claim for the application of the condemnation deposits must be rejected.

■ What we have said is, of course, without prejudice to any possible claims on the condemnation fund by other persons not now before us. Under 40 U.S.C.A. § 258a, the court has discretionary authority to make partial disbursements from

time to time, but naturally, before doing so, the court will satisfy itself that the amount remaining in the registry is probably sufficient to take care of other possible claimants.

The orders of the District Court in Nos. 4046 and 4047, each dated September 14, 1944, are affirmed, with costs.